UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| LIONELL RUTHERFORD, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5: 14-153-DCR |
| | ) |
| V. | ) |
| | ) |
| BUREAU OF PRISONS, et al., | ) **MEMORANDUM OPINION** |
| | ) **AND ORDER** |
| Defendants. | ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Lionell Rutherford was formerly confined at the Federal Medical Center in Lexington, Kentucky.[1] He has filed a Complaint alleging claims under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Additionally, Rutherford seeks review of the Bureau of Prisons' ("BOP") determination of his security level and resulting prison assignment. [Record Nos. 1, 3, 9, 10] For the reasons outlined below, the Complaint will be dismissed.

**I**

Rutherford has a lengthy criminal history. On July 28, 1997, he pleaded guilty to a single count of assaulting and interfering with a flight attendant and was sentenced to four-month term of incarceration. *United States v. Rutherford*, No. 1:97-CR-80-PAG-1 (N.D. Ohio 1997) (*Rutherford I*). On November 9, 2000, Rutherford pleaded guilty to a single count of passing counterfeit obligations or securities and was sentenced to a ten-month term

---

1  Rutherford was transferred to a medium security facility (the Federal Correctional Institution in Beaver, West Virginia) during the pendency of this action. [Record No. 12]

of incarceration. *United States v. Rutherford*, No. 1:00-CR-279-LW-1 (N.D. Ohio 2000) (*Rutherford II*). Thereafter, on July 13, 2001, Rutherford pleaded guilty to conspiracy, counterfeiting, and bank fraud, and was sentenced to a 35-month term of incarceration. *United States v. Rutherford*, No. 1:01-CR-130-LW-1 (N.D. Ohio 2001) (*Rutherford III*).

Following his service of these sentences, on February 27, 2004, Rutherford was released from federal custody to begin a term of supervised release in *Rutherford II* and *Rutherford III*. Unfortunately, he was unable to complete supervision without further offenses. Between March and August 2005, Rutherford was indicted by state authorities in Cleveland, Ohio, for drug possession, forging identification cards, receiving stolen property, and theft. And to compound matters, he failed to appear at three separate trials. As a result of these new violations and his repeated failure to comply with the terms of his federal supervised release, on March 3, 2006, the federal court in Ohio sentenced Rutherford to serve one year and one day in prison in each case. (*See Rutherford II*, Record No. 78; *Rutherford III*, Record No. 244.)

Again, however, there were further infractions. On June 1, 2006, Rutherford and eight other individuals were indicted for their participation in a scheme to commit bank fraud. Rutherford pleaded guilty and on March 12, 2007, was sentenced to a 27-month term of imprisonment followed by a five-year term of supervised release. *United States v. Rutherford*, No. 1:06-CR-272-SL-1 (N.D. Ohio 2006) (*Rutherford IV*). On April 6, 2011, Rutherford was again indicted for his participation in a 2009 scheme to commit bank fraud. He pleaded guilty and on January 12, 2012, was sentenced to a 43-month term of incarceration. *United States v. Rutherford*, No. 1:11-CR-140-PAG-2 (N.D. Ohio 2006)

(*Rutherford V*). This new criminal conduct also violated his supervised release in *Rutherford IV*. As a result, on March 15, 2014, the court imposed a partially-concurrent 24-month sentence. (*See Rutherford IV*, Record No. 224.)

Finally, on August 23, 2012, Rutherford was again indicted for conspiracy to commit bank fraud. He pleaded guilty and on May 22, 2013, was sentenced to a 40-month term of incarceration to run consecutively to his previously-imposed sentences. *United States v. Rutherford*, No. 1:12-CR-391-PAG-2 (N.D. Ohio 2012) (*Rutherford VI*). The BOP's inmate locator database indicates that Rutherford's current projected release date is November 23, 2018.

Rutherford filed his original Complaint on April 21, 2014. [Record No. 1] He alleges that, under the BOP's system for designating inmates to a prison with an appropriate security level, he has always had 11 or fewer points. As a result, Rutherford claims that he should have been placed in a minimum security facility used for prisoners with 0-11 points. However, he was assigned to FMC-Lexington, a low security facility for prisoners with 12 to 15 points.[2] [*Id.*, p. 1]

Rutherford states that he talked with his Unit Team in an attempt to be transferred to a minimum security facility, preferably one closer to Cleveland, Ohio, so that he could be near his ailing mother. [*Id.*, p. 2] However, the BOP's Designation and Sentence Computation Center ("DSCC") in Grand Prairie, Texas, denied his request. Rutherford contends that the denial was improperly based upon an invalid detainer filed by state authorities which was

---

2   *See* BOP Program Statement ("PS") 5100.08 ch. 1, p. 2 (Sept. 12, 2006).

removed one day after he requested transfer. He also alleges that it was the invalid detainer which caused DSCC to apply a "management variable" to him.[3] [*Id.*]

Rutherford indicates that Unit Manager Trimble advised him that he would request that Rutherford be transferred if he dismissed his inmate grievances challenging his placement, paid $100.00 per month towards his court-ordered fine, and maintained employment with the prison. [*Id.*, p. 3] After he complied, Trimble accordingly applied to have him transferred on March 4, 2014, but DSCC again denied the request. Rutherford contends that there is no lawful basis to apply a management variable to him because there is no valid detainer. Therefore, he asserts that must be transferred to a minimum security facility under BOP policy.[4] [*Id.*, pp. 3-4]

In his first amended Complaint, Rutherford added a new allegation that Unit Manager Trimble and the Warden of FMC-Lexington apply management variables only to African-American inmates; however, he offers no factual basis for this claim. [Record No. 9, p. 1; Record No. 13, p. 1] Rutherford also contends that Trimble disliked the fact that he was challenging his prison placement and retaliated against him by lying to inflate his security score. [Record Number 10, p. 2] In support of his assertions, Rutherford points to a March 6, 2014 transfer request, in which Trimble set forth positive factors weighing in favor of his

---

3   The BOP may use a management variable to place a prisoner in a different security facility than his security point score would otherwise indicate if any of a dozen factors indicates that placement in a higher or lower security facility is warranted. PS 5100.08 ch. 2, p. 3; ch. 5, pp. 1-10.

4   Rutherford contends that he has exhausted his administrative remedies as required by 28 U.S.C. § 1997e(a) because he withdrew his grievances in reliance upon Trimble's assurances that he would apply for Rutherford's transfer upon satisfaction of the conditions mentioned. However, Rutherford's claims are resolved on other grounds without deciding whether he should be deemed to have exhausted his administrative remedies.

placement in a lower security facility.[5]  [*Id.*, pp. 2-3]  Rutherford compared that to a June 3, 2014 transfer request, where Trimble identified negative factors weighing in favor of placing Rutherford in a higher security facility.  [*Id.*]

On May 12, 2014, after the first transfer request was filed but before the second was initiated, Rutherford was involved in a confrontation with another inmate and received an incident report for assault.  [Record No. 9, p. 1; Record No. 10, p. 2]  He received disciplinary sanctions as a result, including placement in disciplinary segregation for three months, loss of commissary privileges, disallowance of good time credits.  Additionally, Rutherford was recommended for transfer to a higher security institution.[6]  [Record No. 15, p. 4]

Prior to the report for assault, a "Male Custody Classification Form" generated by DSCC on April 1, 2014, indicated that Rutherford's total security score was 10 calculated from a Base Score of 12, a Custody Score of 18, and a Variance of minus 2.  [Record No. 15-1, p. 1]  The form showed that zero points were added to Rutherford's Base Score as a result of detainers because none were lodged against him.  It also noted that his Custody Score was based upon "average" living skills and program participation, with no disciplinary reports.

---

[5]  The March 6, 2014, transfer request noted that Rutherford's institutional adjustment was "average," because he had received no incident reports since his surrender to federal custody in 2012, was participating in the Inmate Financial Responsibility Program, and received "average" work reports.  The request also noted that in 1990, as a juvenile, Rutherford was convicted of kidnapping and rape.  However, his juvenile record was expunged in 2008 removing adverse safety factors for prior serious violence and for being a sex offender.  The request concluded by stating that staff considered Rutherford appropriate for a transfer to a lower security facility offering the Residential Drug Abuse Program.  [Record No. 13-1, p.1]

[6]  Depending upon the level of violence occurring during the assault, an inmate can be charged with Assaulting any Person (Serious), a Code 101 offense constituting a Greatest Severity Level Prohibited Act, or Assaulting any Person (Less Serious), a Code 224 offense constituting a High Severity Level Prohibited Act.  *See* PS 5270.09 App. D, Table 1.

The form concluded that Rutherford should be considered for a transfer to a minimum security facility based on his total security score of 10. [*Id.*]

However, after Rutherford's May 12, 2014, altercation and resulting disciplinary conviction, on June 3, 2014, DSCC generated a new and revised classification form. [Record No. 15-2, p. 1] In light of the incident report for assault, the form revised his Base Score from 12 to 16. *See* PS 5100.08, ch. 6, p. 6. Additionally, Rutherford's Custody Score changed from 18 to 12 based upon a reduction in his Unit Team's assessment of both his living skills and program participation from "average" to "poor." DSCC further noted that Rutherford now had one disciplinary conviction for a "high" level infraction, meaning a Code 200 level offense. *Id.*, ch. 6, pp. 9-12. After applying a Variance of plus 2 to Rutherford's Base Score of 16 through application of Table 6-1(M), Rutherford received a total security score of 18. S*ee Id.*, ch. 6, § 9 at p. 15. This score warranted an increase in his custody level. *Id.*, ch. 1, p. 2. In July 2014, Rutherford was transferred to FCI Beckley, a medium security facility in Beaver, West Virginia. [Record No. 12]

On April 21, 2014, Rutherford filed his original complaint challenging his classification. [Record No. 1] For relief, Rutherford seeks the removal of the management variable and transfer to a minimum security facility, preferably close to Cleveland, Ohio, to be closer to his mother. [*See* Record Nos. 15, 16]

**II**

The Court conducts a preliminary review of Rutherford's Complaint and amended Complaint because he has been granted permission to pay the filing fee in installments and asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. Upon

screening, a district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). The Court evaluates Rutherford's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

As a preliminary matter, the Court concludes that Rutherford lacks any constitutionally-protected liberty interest in being assigned to a particular prison. Further, even if he did possess such an interest, the BOP's decision to assign Rutherford to a medium security facility is entirely consistent with its regulations. The Supreme Court has established that prison assignments and transfers are functions wholly within the discretion of the Bureau of Prisons. *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State. Often, confinement in the inmate's home State will not be possible."). Inmates have no liberty interest protected under the Due Process Clause of the Fifth Amendment to remain free from discretionary transfer to a prison less agreeable to them. *Meachum v. Fano*, 427 U.S. 215, 225 (1976). Therefore, Rutherford cannot establish any right under the Constitution supporting his claim for a transfer to a different federal prison. *Cf. Ford v. Harvey*, 106 F. App'x 397, 399 (6th Cir. 2004); *Webb v. Farley*, No. 4:12cv1842, 2013 WL

2186482, at *3 (N.D. Ohio May 21, 2013). And even if the BOP failed to adhere to its own regulations regarding prison placement, that failure would not implicate constitutional protections. *Cf. Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003); *Embrey v. Sepanek*, No. 11-CV-119-HRW, 2012 WL 1205721, at *4 (E.D. Ky. Apr. 10, 2012).

Notwithstanding Rutherford's lack of a constitutional claim, it is also clear that the BOP acted in conformity with its regulations when determining Rutherford's custody level. In his original Complaint, Rutherford alleged that his placement in a low security facility at FMC-Lexington was improperly based upon a subsequently-invalidated or withdrawn detainer. [Record No. 1, pp. 1-2] Documents later filed by Rutherford establish that on April 1, 2014 (before filing his Complaint), he had no pending detainers. [Record No. 15-1, p. 1] In fact, at that time, it appears that the DSCC was giving active consideration to reducing his custody level. [*Id.*]

However, on May 12, 2014, Rutherford fought with another inmate, resulting in a disciplinary conviction for assault. [Record No. 9, p. 1; Record No. 10, p. 2] The assault formed the basis for the revised June 3, 2014 Custody Classification Form, which expressly noted his disciplinary conviction as grounds to increase his Base Scoring and decrease his Custody Scoring. [Record No. 15-2, p. 1] The disciplinary report for assault caused the DSCC to assign a four-point increase in his Base Scoring from 12 to 16. PS 5100.08, ch. 6, pp. 6-7. It also caused the DSCC to assign a six-point decrease in his Custody Scoring from 18 to 12. Four of these points were assigned directly by the DSCC, including the loss of one point in the frequency of disciplinary report category and the loss of three points for the type of disciplinary report category. *Id.*, ch. 6, pp. 11-12. The two remaining points were

deducted by the Unit Team because Rutherford's living skills and program participation had declined from "average" to "poor." [Record No. 15-2, p. 1]

Additionally, even if Rutherford could establish that the Unit Team downgraded his scores for living skills and program participation for improper reasons, his custody score would still warrant placement in a medium security facility. If the Unit Team had continued to assess his living skills and program participation as "average" on June 3, 2014, his Custody Score would have dropped four points instead of six, to 14. With a Base Score of 16 and a Custody Score of 14, the resulting Variance is plus 1 under Table 6-1(M). Rutherford's total security score would have been 17, still warranting placement in a medium security facility. PS 5100.08, ch. 6, p. 15; ch. 1, p. 2. Accordingly, for the reasons discussed herein, it is hereby

**ORDERED** as follows:

1. Rutherford's Complaint, as amended, [Record Nos. 1, 3, 9, 10] is **DISMISSED**, with prejudice.

2. This is a final and appealable order and there is no just cause for delay.

3. This matter is **STRICKEN** from the active docket.

This 4th day of September, 2014.



Signed By:
*Danny C. Reeves* DCR
United States District Judge